## MORSE v. UNITED STATES.
### No. 43055.

Court of Claims.
April 4, 1938.

L. L. Hamby, of Washington, D. C., for plaintiff.

Titian W. Johnson, of Washington, D. C., and Sam E. Whitaker, Asst. Atty. Gen., (C. Hugh Duffy, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

This patent case is to be determined upon the issue of the validity or invalidity of plaintiff's patent. If the patent is valid, infringement is admitted. April 12, 1921, the plaintiff obtained the grant of patent No. 1374314. Following proceedings with respect to plaintiff's original application, the Patent Office finally allowed two of plaintiff's five claims and upon these the plaintiff relies to establish infringement.

The two claims read as follows:

"1. The method of dropping bombs from aircraft, which consists in pointing the aircraft downward when substantially over the target and in dropping a bomb while the aircraft is diving rapidly downward, whereby the bomb is dropped with a high initial velocity downward and a comparatively small velocity component in a horizontal direction.

"2. The improvement in the art of dropping bombs from aircraft which consists in carrying a bomb attached to an aircraft until it is substantially over a target, then causing the aircraft to dive substantially vertically toward the target, and then detaching the bomb while the aircraft is pointed at the target, whereby the horizontal component of the bomb trajectory is substantially eliminated and the bomb is hurled with a high initial vertical velocity toward the target."

It is manifest from the above claims that the patent is a "method one." No mechanism of any character is involved. The novelty said to reside in the method claimed consists wholly in a claimed change from the old method of approach employed in aircraft bombing toward the target intended to be hit.

The patent specifications describe in detail and at considerable length the inherent difficulties and imperfections in utilizing horizontal flights of airplanes in the process of dropping bombs intended to explode at a certain point. An airplane in horizontal flight can not drop a bomb so the latter will instantly go straight downward. The speed of the airplane naturally

imparts to the bomb the moment it is released a component of velocity "approximating that of the horizontal velocity of the airplane."

Obviously the trajectory of the bomb released as above noted will approximate a parabolic one, and will be influenced more or less in its descent by wind and other atmospheric conditions. The altitude of the airplane and its speed at the moment of release of the bomb are vital factors in ascertaining the results attendant upon effective bomb-dropping.

The aviator in order to ascertain the precise moment to release a bomb in horizontal flying has available what is termed a "bomb sight," a delicate scientific instrument which may be adjusted with the speed and altitude of the airplane, and thus determines for him the moment when he should release the bomb in order to strike the target intended to be hit. The necessity for accuracy and precision in determining when to release the bomb is apparent from the fact that at no moment of release is the aviator exactly above the target to be hit.

If the bomb is released too soon it will strike ahead of the target; if too late, behind it. What we mean is diagrammatically illustrated in Fig. 1, finding 3. We need

FIG. 1.

only say that aiming at a target and successfully striking it are more difficult when the instrumentality employed to discharge the bomb is in a horizontal rather than a vertical position, notwithstanding both instrumentalities are under great speed.

The plaintiff's patent, intended to eliminate the difficulties and imperfections of releasing bombs from an airplane in horizontal flight, depends so far as invention is concerned upon a single change in the angle of flight of the airplane, i. e., from a horizontal to a vertical one, before the bomb is released by the aviator.

The specifications and claims of the patent in suit disclose that the novelty of plaintiff's method is restricted to "pointing the aircraft downward when substantially over the target,"—in other words, converting a horizontal flight into a vertical flight before releasing the bomb. This it is claimed imparts to the bomb a minimum of velocity component in a horizontal direction and a very high degree of velocity to the bomb itself, accomplishing by this method precision in results.

Additional advantages are claimed in the elimination of instruments employed in horizontal bomb dropping, as well as the availability of the method at high altitudes out of the range of anti-aircraft guns. In fact, it is asserted that the higher the altitude of the plane the greater the velocity imparted to the bomb, and its destructive effect is accelerated. An airplane traveling in a vertical position at great speed releases a bomb; naturally the horizontal component of velocity is eliminated, and the vertical component increased; the time of descent is shortened and the factors of atmospheric disturbances greatly reduced.

The patent does not disclose the discovery of any new scientific principles. It was not new or novel to change the flying angle of airplanes. The plaintiff availed himself of what had long been known, and takes existing mechanisms, alters their course through the air, and insists that by so doing he has pointed out a method original in conception and novel in operativeness. While these facts do not of themselves negative invention, they are essential factors in determining whether it exists.

The plaintiff's application contained five claims. Claim 1 was as follows: "The method of dropping bombs from aircraft, which consists in causing the aircraft to dive downward toward a target, and in dropping a bomb while the aircraft is so diving, whereby the bomb is given a high initial velocity in a downward direction."

A British patent to von Willisch in 1911 and an additional British one to Coanda in 1913 were cited by the Patent Office as anticipatory, and all five claims were rejected. Claims 1 and 3 were rejected for lack of invention. Claims 4 and 5 were directed to a combination of an airplane and a mechanism to discharge a bomb from the plane. They were rejected and not involved in this suit. The plaintiff did not cancel his claims, but insisted upon their validity, and added to his application what is now claim 1 in suit.

The application was finally rejected by the Primary Examiner, and the plaintiff appealed to what is now the Board of Appeals of the Patent Office. The Board allowed what are now claims 1 and 2 and rejected the others, deciding that inasmuch as these two claims are limited to pointing the airplane downward when substantially over the target and substantially vertical toward the same they are allowable.

The limitation placed upon the claims narrows them to such an extent that it is difficult to ascertain with any degree of definiteness when and under what circumstances the method involved applies. Again referring to Fig. 1, finding 3, it is apparent that the airplane is in horizontal flight during the process of ascertaining its position "substantially over the target." This portion of flight is excluded from the patent.

The patented method does not begin to function until the airplane descends vertically as far at least as is shown by Fig. 7. At this point the specifications state,

**FIGURE 7.—MAKING A DIVE TOWARD THE TARGET.**

Leaving out wind pressure, A would be the airman's point of release to hit the target while going 40 miles an hour. If, as shown also, he preferred to nose-dive to half altitude, B would be his effective point for letting go his bomb.

"The bomb is aimed by aiming the airplane, somewhat as the machine gun in a one-man fighting airplane is aimed. A slight allowance is made for windage and for the residual horizontal velocity of the airplane. The downward dive is commenced when a substantially vertical sight shows the aircraft to be nearly over the target."

Section 4888, Revised Statutes (Title 35, Sec. 33, U.S.C., 35 U.S.C.A. § 33), is in the following language: "Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. The specification and claim shall be signed by the inventor and attested by two witnesses."

The specifications cited and the language of the claims involved do not point out within any reasonable degree, if at all, any angle of dive. The plaintiff testified that "no exact angle is necessary so long as you are substantially over the target." It is at once obvious that the change from a horizontal to a vertical flight of an airplane engaged in bombing must be determined by the aviator. He and he alone must adjust the position of his plane in such a way as to make the release of the bomb effective, irrespective of the angle of approach. Finding 12, amply supported by the record, discloses the facts. The aviator is entitled to know unequivocally when he may avoid or infringe the patent.

Keeping in mind that we are concerned with a method or so-called process patent wherein the inventor utilizes an existing apparatus to obtain the results claimed, it is essential that the specifications and claims be sufficiently definite to disclose to those skilled in the particular or analogous arts how the method may be practiced, and when it is being practiced. This rule is axiomatic, predicated in part upon the principle that all specifications and claims must of themselves distinguish the claimed invention from the prior art.

The plaintiff's alleged invention is wholly dependent upon the characteristic principle of the airplane, the bomb to be dropped, and the target to be hit. The process to accomplish practical results exacts precision. The benefits to accrue over the prior art reside exclusively in precision, and if the teachings of the patent place no limitations of sufficient definiteness to instruct one in its use the patent is invalid. As a matter of fact, the novelty claimed for the method specified is precision.

The plaintiff admitted that "if any particular angle were required the method would be practically worthless. It is impossible to ascertain when you are directly over something." The novelty of the patent is described as follows: "its effectiveness is due to the high initial hurling of the bomb when it is released and that was the objective to shoot a bomb weighing 500 or 1,000 pounds without hurting the airplane." In other words, to release a bomb when the airplane is in a "nose dive" infringes the patent, if perchance the plane itself is substantially over the target.

The various altitudes assumed by aviators in bomb dropping, as well as in ordinary flying, are too numerous to mention. The so-called "swooping method" involves a deviation from horizontal flying. The velocity of the plane is determined by existing emergencies and necessities due in part to its altitude in the air. In war times, during aerial combat, the altitude of a bombing plane is subject to numerous changes, and plaintiff's claims do not disclose a definite differentiation from what has taken place before. The disclosure is obscure.

"The claim of a patent is the life of the patent; and either alone or as interpreted by the description, it must clearly and exactly draw the line between the inventions over which the patentee asserts his exclusive rights, and those which are beyond the scope of his monopoly. * * * if it is uncertain, conveying some idea but not precisely specifying its essential characteristics * * * the patent is inoperative * * * and affords no protection to the patentee." Robinson on Patents, Vol. III, Sec. 972, p. 166. Robins v. Wettlaufer, Cust. & Pat.App., 81 F.2d 882.

It would not constitute invention for one to take a rifle from a person shooting at a target from an angular position, and standing erect shoot directly at the target.

The advantages of the change exacted no original concept, at least at this late day. Surely the idea of direct flying toward a target to be hit did not involve more than a suggestion of its apparent and well known advantages. It is a scientific fact, common knowledge to those skilled in the art.

### Prior Art

It is true that no pertinent art was cited by the Patent Office during the prosecution of plaintiff's application. The Primary Examiner rejected all the claims, holding they involved no patentable invention. The fact is immaterial. The defendant introduces a copy of the Scientific American Supplement of April 22, 1916. The article relied upon is entitled "Scientific Bomb Dropping." The author after discussing in detail the method of dropping bombs when the airplane is in horizontal flight, and the instruments used to ascertain the location of the target to be hit, as well as the essential angle of approach thereto, concludes with the following: "If the aviator dives (Fig. 7) toward his target, accuracy of aim becomes easier, and effective work can be done without scientific instruments; but risk from hostile fire becomes greater."

The reference is challenged by the plaintiff. It is said to be impertinent because the illustration referred to does not in any sense disclose a comprehension or conception of plaintiff's essential features embodied in his claims.

It can not be denied that the author comprehended and suggested to those skilled in the art the resulting benefits accruing from a steep dive directly toward the target.

The article clearly indicates the advantages gained from increasing the vertical component and decreasing the horizontal component in the approach of the airplane to the target in the bombing operation. What was published is not obscured by ambiguous language.

With these facts as common knowledge, the only factors tending to control the degree of vertical dive would be the physical effect on the pilot and on the structure of the airplane.

If the alleged method of the patent in suit differs at all from this disclosure, the different is one of degree only and of such a nature as was already apparent to those skilled in the art.

The plaintiff has admitted that a zone of noninfringement obtains extending from the point where the plane departs from its horizontal position to the point where it assumes a vertical one. A skilled aviator reading this article, as the defendant observes, would know how to maneuver his plane to obtain the best results.

A British publication contains an article upon "The Elements of Bomb-dropping," published October 10, 1917. It is to be noted that article appeared during the pendency of the war and the author was handicapped in a great measure by the necessity for secrecy. It does disclose, however, an existing knowledge of the effect of vertical flying in its relationship to bomb-dropping. "If," the author states, "the machine is nose-diving, clearly, the bomb, as it is released, is already possessed with a downward component of velocity which reduces the time taken to reach the ground."

The plaintiff seeks to discredit the article as a pertinent reference, upon the ground that it describes nothing more or less than the "swooping method." The criticism is directed toward the meaning and scope of a so-called "nose dive." The author centers most of his attention to bomb-dropping when the airplane is in horizontal flight, and when he refers to a "nose dive" and accompanies the reference with the advantages attendant upon such a dive, it is clear he refers to a vertical one, and if for no other reason he attributes to it the same beneficial results the plaintiff claims for his patent.

To comment in extenso upon additional references in the record would tend only to lengthen this opinion. The history of the art disclosed in most of them confirms the fact that the execution of horizontal, swooping, and vertical methods of flight by airplanes was old.

■ In the beginning of the use of airplanes in bomb-dropping, the problem involved not alone the accuracy of aim at the target, but the construction of the plane and its ability to withstand the rigors of the service. It is, we think, no answer to a charge of invalidity of the patent involved that vertical flying without the use of instruments to spot the target was not resorted to at once. Those skilled in the art were well aware of and stated the attending features of vertical flying, and to adapt it to bomb-dropping exacted no more than awaiting the presence of airplanes suitable and sufficient in construction to do so.

This case is not similar in principle to the case of Tilghman v. Proctor, 102 U.S. 707, 26 L.Ed. 279. In that case, involving a mechanical and chemical process, the inventor discovered a new method or process of manufacture and added a new element which produces the knowledge that the product desired could be brought into being by an undiscovered process of chemical change.

■ What the plaintiff claims, and all his claims implicate, is that novelty resides in pointing downward an airplane in flight directly at the target to be hit and releasing the bomb when substantially over it, thereby increasing the initial velocity of the bomb and obtaining accuracy in result. This, we think, did not develop a new scientific fact or produce a new and novel method not within the knowledge of those skilled in the art.

The petition will be dismissed. It is so ordered.